IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | )   Criminal No. 1:06cr68 |
| | ) |
| STEPHEN J. WASHINGTON | ) |

**MEMORANDUM OPINION**

Following a traffic stop and a subsequent search of his vehicle, defendant Stephen J. Washington was arrested and charged with one count of possession with intent to distribute five grams or more of crack cocaine, in violation of 21 U.S.C. § 841(a)(1) (Count One), one count of possession with intent to distribute marijuana, in violation of 21 U.S.C. § 841(a)(1) (Count Two), and two counts of possession of a firearm in furtherance of a drug trafficking crime, in violation 18 U.S.C. § 924(c)(1) (Counts Three and Four). By pretrial motion, defendant sought to suppress the drugs and firearms recovered from his vehicle in the course of the search. Following an evidentiary hearing and supplemental briefing, defendant's motion to suppress was denied by Order dated May 23, 2006. *See United States v. Washington*, Criminal No. 1:06cr68 (E.D. Va. May 23, 2006) (Order). Recorded here, in more detail than was provided in the bench ruling, are the facts and reasons underlying that ruling.

**I.**[1]

The record reflects that on November 19, 2005, Officer David Koenigsberg of the Fairfax County Police Department was on routine patrol in a marked police cruiser in the Mount Vernon

---

[1] The facts recited here are the Court's findings of fact pursuant to Rule 12, Fed. R. Crim. P.

District of Fairfax County, Virginia. With Officer Koenigsberg on this occasion was an intern with the Police Department who was dressed in civilian clothes and serving as a "ride-along." At approximately 4:00 p.m. on that date, while traveling southbound on Route 1, Officer Koenigsberg observed in his rearview mirror a vehicle approaching on his left that was traveling faster than other traffic. As the vehicle got closer, Officer Koenigsberg also observed that the vehicle — a Nissan Altima — was without a Fairfax County registration decal and had a crack in the windshield approximately six inches above the dashboard that spanned the entire length of the windshield from the driver's side to the passenger's side. The vehicle, whose sole occupant was defendant as the driver, passed Officer Koenigsberg's car, made a lawful u-turn at Buckman Road and proceeded to head north on Route 1. Officer Koenigsberg followed the vehicle and, when defendant proceeded to turn right off of Route 1 onto Napper Road, Officer Koenigsberg activated his emergency lights to initiate a vehicle stop. Defendant, in response, pulled his vehicle over onto the side of Napper Road; Officer Koenigsberg stopped his police cruiser directly behind defendant's vehicle and immediately reported the vehicle stop to his dispatcher.

      Shortly after the stop, Officer Koenigsberg, who was in uniform with his badge displayed, exited his police cruiser and approached defendant's vehicle on the driver's side; the ride-along also exited the police cruiser and approached defendant's vehicle. Defendant immediately opened the driver's side door of the vehicle and explained to Officer Koenigsberg that the driver's side window was broken. Officer Koenisgberg then asked defendant for his license and registration. He also asked defendant where he was driving, and defendant responded that he was traveling to his

girlfriend's house.[2] Defendant also advised Officer Koenigsberg that the vehicle he was driving belonged to his mother. During this interaction, Officer Koenigsberg observed that defendant's eyes were watery and bloodshot; defendant also appeared nervous and his hands were shaking as he handed his license and registration to Officer Koenigsberg. Officer Koenigsberg therefore asked defendant if he had been drinking at all that day. Defendant responded that he had not and offered several times to submit to a breathalizer or sobriety test. Officer Koenigsberg, however, declined to administer a field sobriety test at that time because he did not believe that defendant was "drunk" or "driving under the influence of alcohol."[3] Instead, Officer Koenigsberg took defendant's license and registration back to his police cruiser to verify the validity of the information,[4] check for any outstanding warrants, and complete the paperwork necessary for the issuance of two citations, one for operating a vehicle with defective equipment, namely the cracked windshield, and a second for lacking a Fairfax County registration decal.[5]

While Officer Koenigsberg was writing the citations, an auxiliary officer arrived at the scene in a patrol wagon. Officer Koenigsberg eventually finished his administrative paperwork and exited

---

[2] Defendant's girlfriend arrived at the scene in the course of the vehicle stop and engaged in a conversation with the defendant while Officer Koenigsberg was otherwise occupied in his police cruiser.

[3] Officer Koenigsberg testified that he is trained to administer one or more sobriety tests on individuals suspected of driving under the influence of alcohol, but that such tests are not administered to individuals suspected of being under the influence of marijuana.

[4] Although not material to the issues presented, it should be noted that the registration provided by defendant to Officer Koenigsberg was for a different vehicle and defendant was unable to produce a valid registration for the vehicle he was driving on that occasion.

[5] As it happened, the vehicle was registered to defendant's mother in Fredericksburg, Virginia, and thus did not require a Fairfax County tag.

his police cruiser, at which point he and the auxiliary officer approached defendant's vehicle to issue defendant the citations and complete the vehicle stop. At that time, however, the auxiliary officer pointed down and alerted Officer Koenigsberg to something located inside the vehicle. Officer Koenisgberg, in response, backed up a bit, looked through the vehicle's rear window, and observed a partially empty bottle of Hennessey (cognac) lying on the rear right side floor of the vehicle. Given this, Officer Koenigsberg again asked defendant if he had been drinking at all that day, and defendant responded, "no, not at all." Officer Koenigsberg nonetheless asked defendant to step out of the vehicle to speak to him about the open container of alcohol seen in his vehicle.

Once outside the vehicle, defendant denied ownership of the alcohol, stating, *inter alia*, "Like I said, this isn't my car. It's my mom's car. As for that bottle, it wasn't really mine." Defendant then consented to a pat down by Officer Koenigsberg and no weapons were found on his person. At that point, Officer Koenigsberg told defendant that he was going to retrieve the open bottle of alcohol from the vehicle, and defendant responded "o.k." or "alright." And significantly, when Officer Koenigsberg leaned into the vehicle from the rear passenger's side door to retrieve the open container of alcohol from the floor of the back seat, he detected an odor of raw marijuana.[6] Officer Koenigsberg then placed the bottle of Hennessey on the trunk of defendant's vehicle, observing that the seal had been broken and that the bottle was approximately one quarter full. He did not at that time reveal to defendant that he had detected the marijuana odor in the vehicle, as he was concerned, *inter alia*, that defendant might attempt to flee. Instead, Officer Koenigsberg said to the defendant,

---

[6] Officer Koenigsberg credibly testified that he is familiar with the distinctive odors of various controlled substances, including marijuana, as a result of extensive law enforcement training and experience. In the course of his 13-year career as a police officer, Officer Koenigsberg has made hundreds of arrests involving various quantities of marijuana and he stated that he has never been mistaken in identifying and seizing suspected marijuana.

"Your eyes are real bloodshot," and asked defendant whether he had ever been in trouble with the law. Defendant responded that he had been arrested for possession of marijuana at the age of sixteen. At this point, Officer Koenigsberg went back into defendant's vehicle to check for the presence of marijuana. He entered through the right front passenger door and observed a dark colored knapsack on the passenger seat. He also noticed that the odor of marijuana was particularly strong in the area where the knapsack was located. Next, Officer Koenigsberg proceeded to search the knapsack and discovered inside one compartment of the knapsack a small electronic scale and several empty jeweler's bags, which, in Officer Koenigsberg's experience, are typically used to package marijuana. Officer Koenigsberg also observed on the surface of the digital scale several small flakes of what he believed was marijuana.

Following discovery of the suspected marijuana flakes, the digital scale and the empty jeweler's bags, defendant was placed in handcuffs. Officer Koenigsberg and the auxiliary officer then proceeded to search defendant's vehicle for additional contraband. In the course of the search, the auxiliary officer discovered a loaded 9 millimeter handgun beneath the front seat of the vehicle. At this point, defendant, who was already handcuffed, was advised that he was under arrest. Thereafter, in the course of a search incident to the arrest, Officer Koenigsberg found approximately $714.88 in cash in defendant's right front pocket, as well as two cell phones and a pager. Officer Koenigsberg then returned to defendant's vehicle to continue the search and discovered a black bag laying beneath the driver's seat, inside of which was a second firearm, a loaded Intra Tec-9 pistol.

The entire vehicle stop was videotaped and recorded, with one microphone located in the ceiling of Officer Koenigsberg's police cruiser and a second portable microphone secured to Officer Koenigsberg's belt. Following defendant's arrest, Officer Koenigsberg transported defendant to the

Mount Vernon police station. There, Officer Koenigsberg advised defendant of his *Miranda* rights, which defendant agreed to waive. Defendant thus agreed to speak with Officer Koenigsberg and, in the course of doing so, defendant admitted possessing the firearms. Following this, Officer Koenigsberg undertook a further, more thorough examination of the knapsack seized from the front passenger seat of the vehicle. In doing so, Officer Koenigbsberg discovered a separate compartment containing a rock of crack cocaine weighing approximately 11.8 grams and several jeweler's bags containing additional marijuana weighing a total of approximately .9 ounces.

As a result of the vehicle stop on November 19, 2005, defendant was issued a total of three citations — the initial two, plus a third based on the open container of Hennessey found inside his vehicle, pursuant to Va. Code 18.2-323.1. Additionally, on March 1, 2006, defendant was charged in a four-count federal indictment with one count of possession with the intent to distribute crack cocaine, in violation of 21 U.S.C. § 841(a)(1) (Count One), one count of possession with the intent to distribute marijuana, in violation of 21 U.S.C. § 841(a)(1) (Count Two), and two counts of possession of a firearm in furtherance of a drug trafficking offense, in violation of 18 U.S.C. § 924(c)(1) (Counts Three and Four).[7]

In a pretrial motion to suppress the drugs and firearms recovered from his vehicle, defendant raised three constitutional challenges, namely (i) that Officer Koenigsberg had no reasonable suspicion of criminal activity sufficient to warrant the vehicle stop, (ii) that Officer Koenigsberg had no constitutional basis to extend the vehicle stop after issuing him the two initial citations, and (iii)

---

[7] The two firearms forming the basis of Counts Three and Four were ultimately combined and charged in a single count. Specifically, by agreement of the parties, Count Three was amended to include reference to "firearms," rather than to a single firearm, and Count Four was accordingly dismissed by Order dated May 10, 2006. *See United States v. Washington*, 1:06cr68 (E.D. Va. May 10, 2006) (Order).

that the warrantless search of defendant's knapsack was constitutionally impermissible. An evidentiary hearing was held on May 4, 2006, at which the government presented the testimony of Officer Koenigsberg, as well as the videotape of the entire vehicle stop. Defendant, by counsel, cross-examined Officer Koenigsberg extensively, but declined the opportunity to present any additional testimony. Following the presentation of evidence and the arguments of counsel, the Court stated its findings of fact from the Bench, pursuant to Rule 12, Fed. R. Crim. P.,[8] and, at the conclusion of the evidentiary hearing, defendant's motion to suppress was denied in part and deferred in part, pending further briefing by the parties. *See United States v. Washington*, Criminal No. 1:06cr68 (E.D. Va. May 4, 2006) (Order). Specifically, defendant's motion to suppress was deferred only with respect to the constitutionality of Officer Koenigsberg's act of reaching into defendant's vehicle to retrieve the open bottle of alcohol in the course of the vehicle stop and was otherwise denied in all other respects. Thereafter, following the parties' submission of supplemental briefs on the deferred issues, defendant's motion to suppress was denied in its entirety by Order dated May 23, 2006. *See United States v. Washington*, Criminal No. 1:06cr68 (E.D. Va. May 23, 2006) (Order).

## II.

Defendant's first argument in support of his motion to suppress is that Officer Koenigsberg lacked a reasonable suspicion of criminal activity sufficient to initiate the stop of defendant's vehicle. In order words, defendant claims that Officer Koenigsberg's observance of the cracked windshield on defendant's vehicle, combined with the lack of a Fairfax County registration sticker,

---

[8] As noted in the course of the bench ruling, the Court found Officer Koenigsberg's testimony credible in all respects.

was not a valid basis for the vehicle stop.  This argument is meritless.

It is well settled that traffic stops for observed traffic violations do not violate the Fourth Amendment. As the Fourth Circuit put it, "[w]hen an officer observes a traffic offense or other unlawful conduct, he or she is justified in stopping the vehicle under the Fourth Amendment." *United States v. Hassan El*, 5 F.3d 726, 730 (4th Cir. 1993) (recognizing that an objective test applies to a traffic stop "however minor" the particular traffic violation in question); *see also Whren v. United States*, 517 U.S. 806, 810 (1996) ("As a general matter, the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred."). It is equally clear that an officer's subjective intentions and motivations play no role in the Fourth Amendment analysis. *Id.* at 813; *Hassan El*, 5 F.3d at 730 (recognizing that an objective test applies to a traffic stop "however minor" the particular traffic violation in question).

Here, the government correctly concedes that because the vehicle operated by defendant in this instance was registered in Fredericksburg, Virginia, and thus did not require a Fairfax County decal, the lack of such a decal on the vehicle was insufficient cause for Officer Koenigsberg to initiate the vehicle stop.[9] Officer Koenigsberg's issuance of a summons to defendant on this basis was therefore erroneous.

The cracked windshield, however, is a different matter; it was sufficient to give Officer Koenigsberg reasonable suspicion to believe that defendant had committed a traffic violation, namely

---

[9] *See, e.g., Commonwealth v. Spencer*, 462 S.E.2d 899 (Va. App. 1995) (recognizing that the lack of a City of Richmond decal, without more, was insufficient to justify a vehicle stop where the officers had not first confirmed where the vehicle was registered and the officers knew that other cities and counties within the Commonwealth do not require decals); *see also* Va. Code § 46.2-752(K) (governing the requirement of county decals on vehicles registered in certain counties and cities within the Commonwealth of Virginia).

operating a vehicle with defective equipment in violation of § 46.2-1003 of the Virginia Code. That section, entitled "Illegal use of defective or unsafe equipment," provides that "[i]t shall be unlawful for any person to use or have as equipment on a motor vehicle operated on a highway any device or equipment...which is defective or in unsafe condition." Va. Code § 46.2-1003. Given Virginia's defective equipment statute, combined with Officer Koenigsberg's observation of a crack spanning the entire length of the windshield,[10] Officer Koenigsberg's initiation of the vehicle stop was constitutionally justified.[11] Moreover, whether the length or size of the crack in the windshield was actually sufficient to amount to "defective" or "unsafe" equipment within the meaning of the Virginia statute is a factual judgment for which Officer Koenigsberg is given the benefit of the doubt in this instance. *See United States v. Ellington*, 396 F. Supp 2d 695, 699 (E.D. Va. 2005) (citing *United States v. Chanthasouxat*, 342 F.3d 1271, 1276 (11th Cir. 2003) ("An officer's mistake of fact may provide the objective basis for reasonable suspicion or probable cause under the Fourth Amendment because of the intensely fact-sensitive nature of reasonable suspicion and probable cause determinations")). Defendant's motion to suppress on this ground was therefore properly denied.

---

[10] A photograph depicting the cracked windshield was introduced as an exhibit in the course of the suppression hearing. This photograph confirms the credibility of Officer Koenigsberg's testimony that he was able to observe the large crack from his rearview mirror prior to the vehicle stop.

[11] *See, e.g., New York v. Class*, 475 U.S. 106 (1986) (traffic stop based on cracked windshield); *United States v. Cashman*, 216 F.3d 582 (7th Cir. 2000) (affirming lawfulness of vehicle stop based on cracked windshield pursuant to statute that makes it unlawful to operate with windshield that is "excessively cracked or damaged"); *United States v. Callarman*, 273 F.3d 1284 (10th Cir. 2001) (traffic stop based on cracked windshield that was 12 inches across); *United States v. Ellington*, 396 F. Supp. 2d 695, 701 (E.D. Va. 2005) (recognizing that "[e]ven if the crack were only eight inches, that size would support a reasonable belief that the crack could have created a defective or unsafe windshield").

**III.**

Defendant next argues that Officer Koenigsberg had no constitutional basis to extend the vehicle stop after issuing him the two initial citations for operating a vehicle with defective equipment and for lacking a Fairfax County registration sticker. In this regard, defendant specifically contends that Officer Koenigsberg violated defendant's constitutional rights by reaching into defendant's vehicle to retrieve the open container of alcohol. This second argument is likewise meritless.

It is now well-established that a law enforcement officer cannot lawfully extend a vehicle stop once the applicable traffic citations have been issued, unless the officer has reasonable suspicion to believe that additional criminal activity is afoot. *See United States v. Sokolow*, 490 U.S. 1, 7 (1989). In other words, the Fourth Amendment "requires an officer to have a reasonable suspicion that criminal activity is afoot before he may...continue to seize a person following the conclusion of the purposes of a valid stop... ." *United States v. Brugal*, 209 F.3d 353, 358 (4th Cir.), *cert. denied*, 531 U.S. 961 (2000). Thus, it is equally well-established that when an officer has such reasonable suspicion, the officer may briefly detain an individual beyond the initial vehicle stop for further investigative purposes. *See Terry v. Ohio*, 392 U.S. 1, 30 (1968). The facts of this case fit squarely within this settled and sensible principle.

Officer Koenigsberg had ample reasonable suspicion of other criminal activity sufficient to extend the vehicle stop after observing a partially consumed bottle of an alcoholic beverage in the back of defendant's vehicle. While Virginia law does not proscribe the mere presence of an open container of an alcoholic beverage in a motor vehicle, it does prohibit the consumption of an alcoholic beverage while operating a motor vehicle. Specifically, §18.2-323.1 of the Virginia Code,

entitled "Drinking while operating a motor vehicle; possession of open container while operating a motor vehicle and presumption," provides as follows:

> A.  It shall be unlawful for any person to consume an alcoholic beverage while driving a motor vehicle upon a public highway of this Commonwealth.
>
> B.  A rebuttable presumption that the driver has consumed an alcoholic beverage in violation of this section shall be created if (i) an open container is located within the passenger area of the motor vehicle, (ii) the alcoholic beverage in the open container has been at least partially removed and (iii) the appearance, conduct, odor of alcohol, speech or other physical characteristic of the driver of the motor vehicle may be reasonably associated with the consumption of an alcoholic beverage.

Va. Code § 18.2-323.1. For purposes of this statute, the phrase "open container" is defined as "any vessel containing an alcoholic beverage, except the originally sealed manufacturer's container." *Id.* Additionally, the term "passenger area" is defined, *inter alia*, as "the area designed to seat the driver of any motor vehicle, any area within the reach of the driver, including an unlocked glove compartment, and the area designed to seat passengers." *Id*.

In this case, a partially empty bottle of alcohol was observed in plain view in the passenger area of defendant's vehicle. The mere presence of this partially consumed container of alcohol, combined with Officer Koenigsberg's earlier observations that defendant's eyes were bloodshot and watery and that his hands were shaking — symptoms and conduct "reasonably associated with the consumption of an alcoholic beverage" — was sufficient to give rise to a "rebuttable presumption" under the statute that defendant had consumed alcohol while driving in violation of Virginia law. *See* Va. Code § 18.2-323.1(B). Moreover, the fact that Officer Koenigsberg did not perceive defendant to be "drunk" or "driving under the influence" and thus did not administer any field

sobriety tests in the course of the vehicle stop, as defendant notes, does not negate the statutory presumption. Indeed, a driver need not be legally intoxicated or "under the influence of alcohol" sufficient to give rise to a conviction under Virginia Code § 18.2-266[12] in order to be found guilty of "drinking while operating a motor vehicle" in violation of Virginia Code § 18.2-323; rather, what is prohibited by § 18.2-323 is the consumption of any amount of alcohol while operating a motor vehicle.

Accordingly, given that Officer Koenigsberg had reasonable suspicion to believe that additional criminal activity was afoot beyond the traffic violations forming the basis of the initial vehicle stop, namely a violation of Va. Code § 18.2-323.1, he clearly acted within the bounds of the Fourth Amendment in briefly extending the traffic stop in this instance. He was likewise justified in conducting a brief investigation into this additional criminal activity by questioning defendant and retrieving the partially consumed bottle of alcohol from defendant's vehicle. Indeed, this limited search was "focused in its objective and no more intrusive than necessary to fulfill that objective." *New York v. Class*, 475 U.S. 106, 118 (1986). Put simply, when a law enforcement officer observes conduct "reasonably associated" with the consumption of alcohol, as occurred here, the statutory presumption arising under § 18.2-323.1 essentially provides sufficient probable cause for the officer to retrieve the offending bottle of alcohol from the vehicle for further investigation, particularly when the bottle is observed in plain view from the exterior of the vehicle.[13] Va. Code § 18.2-323.1.

---

[12] Section 18.2-266, entitled "Driving motor vehicle, engine, etc., while intoxicated," provides, in pertinent part, that "[i]t shall be unlawful for any person to drive or operate any motor vehicle...(i) while such person has a blood alcohol concentration of 0.08 percent or more... [or] (ii) while such person is under the influence of alcohol... ." Va. Code § 18.2-266.

[13] It should also be noted that defendant essentially consented to Officer Koenigsberg's retrieval of the bottle of alcohol from the vehicle in this instance when he did not object to the act

Defendant's motion to suppress on this ground was properly denied.

**IV.**

Defendant's third and final claim is that Officer Koenigsberg's warrantless search of defendant's knapsack — where he initially located the suspected marijuana flakes, the digital scale, and the empty jeweler's bags — was constitutionally impermissible. This argument, like the first and second, fails on the merits.

It is well settled that the Fourth Amendment permits warrantless searches under the "automobile exception," which teaches that "[i]f a car is readily mobile and probable cause exists to believe it contains contraband, the Fourth Amendment...permits police to search the vehicle without more." *Maryland v. Dyson*, 527 U.S. 465, 466 (1999). And, if such probable cause exists to search a particular vehicle under the automobile exception, the authority to search likewise extends to warrantless searches of any containers or compartments located inside the vehicle. *See Wyoming v. Houghton*, 526 U.S. 295 (1999); *California v. Acevedo*, 500 U.S. 565 (1991); *United States v. Bullock*, 94 F.3d 898, 899 (4th Cir. 1996). And, as particularly relevant here, the Fourth Circuit has recognized that the odor of marijuana alone can provide sufficient probable cause to justify a warrantless search of a vehicle and its compartments under the automobile exception.[14]

---

before it occurred. Indeed, when Officer Koenigsberg advised defendant that he was going to retrieve the open bottle of alcohol from the vehicle, defendant responded "o.k." or "alright."

[14] *See, e.g., United States v. Scheetz*, 293 F.3d 175, 184 (4th Cir. 2002) (stating that "once the car was properly stopped and the narcotics officers smelled marijuana, the narcotics officers properly conducted a search of the car") (citing *United States v. Morin*, 949 F.2d 297, 300 (10th Cir.1991) (holding that, because marijuana has a distinct smell, "the odor of marijuana alone can satisfy the probable cause requirement to search a vehicle or baggage")); *United States v. Humphries*, 372 F.3d 653, 659 (4th Cir. 2004) (stating that "in the case of a search, when the odor emanates from a confined location such as an automobile or an apartment, we have held that officers may draw the conclusion that marijuana is present in the automobile or the apartment")

These principles, applied here, compel the conclusion that Officer Koenigsberg's detection of the odor of marijuana in defendant's vehicle— a distinctive, and to him, quite familiar odor — provided sufficient probable cause to search the vehicle as well as any containers or compartments located within the vehicle under the automobile exception. *See, e.g., Bullock*, 94 F.3d at 899. The warrantless search of defendant's knapsack was therefore permissible under the Fourth Amendment and defendant's motion to suppress was properly denied.[15]

An appropriate Order has issued.

_____/s_____
T. S. Ellis, III
United States District Judge

Alexandria, VA
July 24, 2006

---

(citing *Scheetz*, 293 F.3d at 184).

[15] The remainder of the searches conducted in the course of the vehicle stop were not contested by the defendant as they were clearly proper given the discovery of the marijuana in defendant's knapsack and the subsequent discovery of a firearm beneath the front driver's seat.